UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. 06-3693(DSD/JJG)

Land O'Lakes Purina Feed, LLC,

      Plaintiff,

v.                                                              **ORDER**

Albemarle Bio-Refinery, LLC,
formerly known as Albemarle
Bio-Refinery, Inc.,

      Defendant.

    Jonathan C. Miesen, Esq. and Stoel Rives, LLP, 100 South Fifth Street, Suite 1900, Minneapolis, MN 55402, counsel for plaintiff.

    Christopher D. Newkirk, Esq., Lindsay G. Arthur, Jr., Esq. and Arthur, Chapman, Kettering, Smetak & Pikala, 81 South Ninth Street, Suite 500, Minneapolis, MN 55402, counsel for defendant.

This matter is before the court on plaintiff's motion for summary judgment. Based upon a review of the file, record and proceedings herein, and for the reasons stated, the court grants plaintiff's motion.

**BACKGROUND**

This diversity-based action arises out of four loans made by plaintiff Land O'Lakes Purina Feed, LLC ("Land O'Lakes") to defendant Albemarle Bio-Refinery, LLC ("Albemarle"). Land O'Lakes – a Delaware limited liability company with its principal place of

business in Minnesota - manufactures and distributes animal feed. (Voran Aff. ¶ 2.) Albemarle - a North Carolina limited liability company with its principal place of business in North Carolina - was formed to build and operate an ethanol plant in North Carolina.[1]

In 2003 or 2004, before securing financing for the ethanol plant, Albemarle retained Land O'Lakes to source the corn it would use to produce ethanol and to market for sale the dried remains of the corn after it had been processed into ethanol.[2] (Voran Aff. ¶¶ 2, 3.) In the summer of 2004, Albemarle informed Land O'Lakes that it was close to securing permanent financing for the ethanol plant but that it needed bridge loans in the meantime.[3] (Voran Aff. ¶ 4.) Land O'Lakes agreed to provide the short-term financing and made four separate loans to Albemarle between December 2004 and January 2005 totaling $504,880.25.[4] (Voran Aff. ¶ 5.) In exchange, Albemarle executed and delivered two promissory notes to Land O'Lakes - the first on January 28, 2005, for $320,000 and the

---

[1] Albemarle was formerly known as Albemarle Bio-Refinery, Inc., and its parent company is DFI Group, Inc. ("DFI").

[2] These remains are known as "dried distillers grain with solubles" and are used as an ingredient in livestock feed.

[3] A bridge loan is a "short-term loan that is used to cover costs until more permanent financing is arranged." Black's Law Dictionary 954 (8th ed. 2004).

[4] The dates and amounts of the loans are as follows: December 2004 ($62,682); December 2, 2004 ($57,198.25); December 23, 2004 ($65,000); January 31, 2005 ($320,000).

second on February 3, 2005, for $181,174.86 (collectively "the Notes"). (Varan Aff. ¶ 6.)

The Notes contain materially identical provisions. Full payment was due on or before June 1, 2005, and if paid by that date, no interest would accrue. In the event of a default, however, the interest rate would be twelve percent per year, and a late fee equal to five percent of the past due amount would apply to any payment past due by more than ten days. In addition, the waiver of any rights contained in the Notes had to be made in writing and executed by Land O'Lakes. (See Pl. Exs. D, E.)

June 1, 2005, passed without payment on the Notes. In reliance on representations by Albemarle that it would secure permanent financing by the end of November 2005, Land O'Lakes did not seek immediate payment. Albemarle failed to secure permanent financing by the end of November 2005. However, relying on continued representations by Albemarle that it would obtain financing, Land O'Lakes did not seek payment. Finally, after Albemarle failed to secure permanent financing in late August 2006, Land O'Lakes filed this action to collect on the Notes. (Voran Aff. ¶¶ 8-12.) On August 15, 2007, Land O'Lakes moved for summary judgment.

**DISCUSSION**

I.  **Summary Judgment Standard**

Rule 56(c) of the Federal Rules of Civil Procedure provides that summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986).  A fact is material only when its resolution affects the outcome of the case.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute is genuine if the evidence is such that it could cause a reasonable jury to return a verdict for either party.  See id. at 252.

On a motion for summary judgment, all evidence and inferences are to be viewed in a light most favorable to the nonmoving party. See id. at 255.  The nonmoving party, however, may not rest upon mere denials or allegations in the pleadings but must set forth specific facts sufficient to raise a genuine issue for trial.  See Celotex, 477 U.S. at 324.  Moreover, if a plaintiff cannot support each essential element of its claim, summary judgment must be granted because a complete failure of proof regarding an essential element necessarily renders all other facts immaterial.  Id.

**II.   Breach of Contract**

Albemarle contends that the parties properly modified the Notes through e-mail after June 1, 2005, and that pursuant to the modification, payment is not due until it secures permanent financing.  Land O'Lakes argues that even if the parties modified the Notes, payment is due because Albemarle has had a reasonable time to secure permanent financing.  For purposes of this analysis, the court assumes, without deciding, that the parties properly modified the Notes to extend the June 1, 2005, due date until Albemarle obtained permanent financing and that the modification did not specify a time-frame within which Albemarle was required to secure that financing.

Performance of a contract must occur within a reasonable time if the contract does not specify a time for performance.  Hill v. Okay Constr. Co., 252 N.W.2d 107, 114 (Minn. 1977).  What constitutes a reasonable time is a mixed question of law and fact generally for a jury to decide.  Henry v. Hutchins, 178 N.W. 807, 809 (Minn. 1920); see also Bly v. Bublitz, 464 N.W.2d 531, 535 (Minn. Ct. App. 1990).  However, in certain cases the issue is properly determined by the court as a matter of law.  Henry, 178 N.W. at 809.

Here, the parties agree that the original loans were short-term bridge loans.  More than two and a half years have passed since Land O'Lakes issued the loans and Albemarle executed the

5

Notes.  Further, it has been more than two years since the alleged modification of the agreements.  Throughout this time, Albemarle made continued unsuccessful efforts to obtain permanent financing.  Currently, the record reveals no foreseeable prospect of Albemarle obtaining permanent financing.  Albemarle's only debt lender has withdrawn from the project, Albemarle is over $3,000,000 in debt, the cost to complete the project has increased by over $15,000,000, the land for the proposed ethanol plant has been foreclosed and Albemarle laid off all of its employees on July 6, 2007.  (See Horton Dep. at 14-15, 71, 74, 77, 92, 100-01, 106, 108.)  Moreover, Albemarle's president and CEO., William Horton ("Horton"), agrees that the loans were short-term loans, and that in his opinion Land O'Lakes has waited a reasonable amount of time for payment on the Notes.  (Id. at 109.)

Albemarle responds with a single affidavit from Horton claiming that securing financing for ethanol operations in North Carolina often takes several years because the ethanol industry is an emerging industry in the eastern United States. To support this assertion, Horton indicates that he is aware of one ethanol plant construction project that took between two and two-and-a-half-years to secure permanent financing and another that continues to search for financing after two-and-a-half-years.  The affidavit, however, contains only generalizations and no specific factual detail. Without more, such general allegations do not create a genuine

6

issue of material fact.  See, e.g., Helfter v. United Parcel Serv., Inc., 115 F.3d 613, 616 (8th Cir. 1997).  Therefore, the court determines that Albemarle has had a reasonable time to secure permanent financing and that the Notes are due.  Accordingly, the court grants Land O'Lakes' motion for summary judgment.

## CONCLUSION

Based upon the file, record and proceedings herein, and for the reasons stated, **IT IS HEREBY ORDERED** that:

1. Plaintiff's motion for summary judgment [Doc. No. 16] is granted.

2. Albemarle shall pay Land O'Lakes $526,233.60.[5]

**LET JUDGMENT BE ENTERED ACCORDINGLY**

Dated:  November 30, 2007

                                        s/David S. Doty
                                        David S. Doty, Judge
                                        United States District Court

---

[5] Land O'Lakes limited its request for relief in its memorandum in support of its motion for summary judgment to the value of the Notes plus the five percent late fee contemplated by the Notes.  The value of the Notes is $501,174.86.  Five percent of that is $25,058.74.